IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD WRIGHT III,<br><br>Defendant. | 8:22CR253<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant's Motion to Request *Franks* Hearing. (Filing No. 60.)  The undersigned held a telephone conference with counsel on September 26, 2023. (Filing No. 79.)  At that time, the undersigned determined that a hearing regarding the motion would not be set, and that the matter would be deemed submitted.  Therefore, this motion is now ripe for disposition.

For the reasons explained below, the undersigned will recommend that the motion be denied.

## FACTS

On October 31, 2022, Omaha police responded to a report of shots fired at a gas station. (Ex. 102.) Officers recovered approximately 60 shell casings from the scene. (Ex. 102.)  Through a review of surveillance footage, officers determined Defendant was at the shots fired incident with a handgun. (Ex. 102.)  At the time, Defendant was on supervised release for a federal firearms conviction.  (Ex. 102.) On November 1, 2022, Omaha Police Officer Cole Johannsen ("Officer Johannsen") obtained a warrant to search Defendant's residence.  (Ex. 102.)

Defendant was arrested during a traffic stop near the Douglas County Jail on the morning of November 2, 2022. (Ex. 102.) At the time of the traffic stop, Defendant was driving to the jail to pick up his sister, Breauna Wright ("Breauna"), who was being released from jail wearing a GPS tracker. (Ex. 102.) On November 2, 2022, shortly following Defendant's arrest, the warrant for Defendant's residence was executed. (Ex. 102.) No firearms or companion equipment was found in the residence. (Ex. 102.)

At 11:43 a.m. on November 2, 2022, Defendant called his sister from the booking area of the jail and told her "[d]on't let nobody fuck with that box in the landing room . . . You hear me." (Exs. 1, 103A.) Breauna told Defendant on the call that she did not know what he was talking about. (Exs. 1, 103A.) Officers then attempted to locate the "box" mentioned during the telephone call. (Ex. 102.) Officers obtained information that the "box" had been moved to a third-party's house that was located within a mile of Breauna's residence. (Ex. 102.) This third-party was identified as Inesha Jackson ("Jackson"). (Ex. 101.) Officers went to Jackson's home, and Jackson told them that Breauna had come to her house earlier that day and asked to keep a safe in Jackson's garage. (Exs. 101, 102.) Jackson allowed the officers to take the safe. (Exs. 101, 102.)

Defendant made four telephone calls to speak to Breauna on November 2, 2022. (Exs. 1, 2, 3, 4.) However, the calls were not to Breauna's phone because Breauna indicated her phone was in Defendant's vehicle. (Exs. 1, 103A.) The second call occurred at approximately 6:00 p.m. (Ex. 2.) During this call, Defendant spoke to another woman because Breauna did not have her phone. (Exs. 1, 2, 103A.) Defendant learned from the other woman during the call that officers had confiscated the safe and told her "Tell her [Breauna] to take that motherfucker out of there." (Ex. 2.) During the third call that occurred at 6:18 p.m., Defendant spoke to Breauna about the "box." (Exs. 3, 103B.) The following conversation took place:

> Defendant: Wop about to come get it from you or you can just take it and meet him somewhere.
> Breauna: The cops got it.
> Defendant: The cops took it from you?
> Breauna: They took it from my home girl's house.
> Defendant: It was at your home girl's?
> Breauna: Yeah.
> Defendant: Why?
> Breauna: Cuz I didn't want it in my house. I don't know what's in it. So I wanted it somewhere where I didn't have to worry about the police busting in the house.

I'm on the tracker. So as soon as you said something about the box in my house, I got that motherfucker out.

(Exs. 3, 103B.)

Breauna further stated that police had asked her for the code to the safe and the police were "about to break it open" after getting a warrant. (Exs. 3, 103B.) The following exchange then took place:

> Defendant: How did they take that motherfucker?
> Breauna: They went to Tay Tay's house and took it.
> Defendant: How the fuck they take it from Shay Shay's house? Did Shay Shay tell them it was there?
> Breauna: They followed me. I guess . . . my house. Or they GPS'd me after I got off the phone with you.
> Defendant: How the fuck gonna say it's mine?
> Breauna: I told them, I don't know who the fuck box it is. I know you said there's a box in my house, so I got the motherfucker out of my house. That's exactly what I told them. I don't know who's fucking box it is. I just know you said a box. I just got out of motherfucking jail. I'm not going to jail for no motherfucking box I had nothing to do with.
> Defendant: Alright Bree.

(Exs. 3, 103B.)

On November 2, 2022, Officer Johannsen then prepared an affidavit to support a warrant for the search of the safe. Officer Johannsen's affidavit indicated, in part, the following:

- Omaha police responded to a shots fired call on October 31, 2022, and recovered 60 spent shell casings.
- Surveillance footage led to the identification of Defendant at the scene, arriving in a car registered to him.
- The surveillance footage showed Defendant get out of his vehicle, raise his right hand pointing the weapon in the general direction the shots were coming from, and appears to attempt to fire the weapon, but the firearm appeared to malfunction and not fire.
- Defendant briefly re-entered his vehicle, then exited brandishing the weapon to the southeast in an attempt to fire.
- Defendant went back to his vehicle and left the scene.
- Defendant was on supervised release for a federal firearms conviction.
- Police searched Defendant's residence pursuant to a warrant during the morning of November 2, 2022 and did not locate any firearms or companion equipment.
- Defendant was arrested in front of the Douglas County jail following a traffic stop. Defendant was going to the jail to pick up his sister.

3

- Police got information about a jail call Defendant made to his sister, Breauna. During that call, Defendant told Breauna to "not let anyone fuck with that box in the room" (affidavit indicated this was a quote from Defendant).
- Breauna was on active GPS monitoring when she was released from the Douglas County Jail.
- Police received information that the "box" was likely transported to a third-party's (Jackson's) residence.
- Jackson's residence was within one mile of Breauna's house.
- Officers contacted Jackson at her residence. Jackson stated that Breauna showed up at her residence earlier in the day and asked if she could put her "safe" (word "safe" not in quotations in the affidavit) in the garage. The third-party turned the safe over to officers, which was found in the garage.
- After recovering the safe, Officer Johannsen called Breauna, who "acknowledged that the safe belonged to her brother and that he did not tell her to remove the safe from the house . . . Breauna also acknowledged that [Defendant] told her not to let anyone mess with the safe" (affidavit did not indicate this was a quote).
- Breauna did not know the code to the safe and said she does not mess with her brother's stuff.
- Additional follow-up was conducted into additional jail calls where Defendant called Breauna and stated, "how did they get the box" (affidavit indicated this was a quote of Defendant's remarks) and "how are they going to know it is mine" (quotation not indicated in the affidavit).
- Breauna responded to Defendant, stating "I didn't tell them it was yours but I told them that you told me to move the box so I moved the box" (quotation not indicated in the affidavit).

(Ex. 101.) A county court judge signed the warrant and the safe was searched at approximately 7:48 p.m. on November 2, 2022. (Ex. 101.) Officers located firearms and Fentanyl pills in the safe. (Ex. 101.)

On or about November 5, 2022, Officer Johannsen prepared a report in connection with the investigation. In his report, he stated the following about Defendant's calls from the jail:

> Additional follow-up was conducted into additional jail calls where . . . [Defendant] calls . . . Breauna and states to her how did they get the box and how are they going to say it is mine . . . Breauna responded with I don't know whose box it is and that she knew he [Defendant] said there's a box in her house so she got it out of her house. Breauna stated she wasn't going to jail for a box she had nothing to do with.

(Ex. 102.)

4

## DISCUSSION

Defendant argues he is entitled to a hearing because law enforcement violated *Franks v. Delaware*, 438 U.S. 154 (1978) because the affidavit supporting the search warrant for the safe contained intentionally two false statements. Defendant contends Officer Johannsen's affidavit included information that differed from his report, as well as the recorded jail calls between Defendant and Breauna. Defendant further argues that once the false statements are removed from the affidavit, the affidavit is insufficient to establish probable cause.

To prevail on a *Franks* claim, a defendant must: 1) make a "substantial preliminary showing" that the affidavit contains false information made deliberately or in reckless disregard for the truth; and 2) the information is necessary for a finding of probable cause. *United States v. Kattaria*, 553 F.3d 1171, 1176 (8th Cir. 2009). "The requirement of a substantial preliminary showing is not lightly met." *United States v. Hines*, 62 F.4th 1087, 1093 (8th Cir. 2023). There is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id*. (quotation omitted). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id*. "Allegations of negligence or innocent mistake are insufficient." *Id*. Additionally, if the affidavit is sufficient to establish probable cause with the false material removed or with the omitted material included, no evidentiary hearing is required. *Id*.

In determining if an affiant's statements were made with reckless disregard for the truth, courts do not simply examine whether a statement included to the affidavit was true. *United States v. Schmitz*, 181 F.3d 981, 986-87 (8th Cir. 1999) (quotation omitted). Rather, courts ask whether, when looking at all the information available to the officer, the officer must have entertained "serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id*.

The first challenged statement in the affidavit is that "Breauna acknowledged that [Defendant] told her not to let anyone mess with the safe." Defendant complains this statement is false because he did not use the word "safe" to describe the "box," mentioned during the phone

calls. Defendant further contends Breauna never "acknowledged" that Defendant told her not to let anyone mess with the safe. The problem with Defendant's argument, however, is that there is no evidence that this statement is false. Taken in context, it is clear from the affidavit that the statement was made based on Officer Johannsen's conversations with Breauna, not from information Officer Johannsen gained from the jail phone calls. Defendant has not offered an affidavit or other evidence indicating Breauna did not make the statements attributed to her by Officer Johannsen, nor did Defendant attempt to explain why this information could not be provided.

Further, from all the information gathered in the investigation and set forth in the affidavit, it is apparent that the "box" mentioned in the phone calls is, in fact, the safe that was searched pursuant to the warrant. In the warrant, Officer Johannsen indicated that officers spoke to Jackson and she told them that Breauna brought a "safe" to her house. Again, Defendant has not offered any evidence to challenge the accuracy of the statement Officer Johannsen's attributed to Jackson. In the calls between Breauna and Defendant, Breauna stated she took the "box" to her friend's house. Taking this information together, it is apparent the "box" mentioned in the calls and the "safe" referred to by Jackson are the same thing. Officer Johannsen's use of the word "safe" in his affidavit as opposed to "box" was not false or misleading.

The second challenged statement in the affidavit is that in a call with Defendant, "Breauna responded with I didn't tell them it was yours, *but I told them that you told me to move the box* so I moved the box." (Ex. 102) (emphasis added). Defendant argues this statement is false because the jail call does not reflect that Defendant instructed Breauna to move the box. Defendant also points out that Officer Johannsen's subsequent November 5, 2022 report characterizes Breauna's statement regarding the removal of the box differently.

Defendant is correct that there are discrepancies between the phone calls, Officer Johannsen's report, and what Officer Johannsen stated in the affidavit regarding the second challenged statement. In one call, Breauna stated "I told them, I don't know who the fuck box it is. I know you said there's a box in my house, so I got the motherfucker out of my house. That's exactly what I told them. I don't know who's fucking box it is. I just know you said a box." In his November 5 report, Officer Johannsen similarly indicated that Breauna stated in a call with

6

Defendant that she did not know whose box it was, but that Defendant said there was a box in the house so she removed it from her home. However, in the affidavit, Officer Johannsen stated that Breauna told Defendant that he told her to move the box.

Despite the discrepancies, there is no indication that the statement in the affidavit that Defendant told Breauna to remove the box from the residence was meant to be misleading. At most, the statement attributed to Breauna was an innocent mistake, which is an insufficient basis for a *Franks* hearing. The innocent nature of the statement is shown through another sentence above it in the same paragraph in the affidavit which indicated that Breauna stated in a call with Officer Johannsen "that the safe belonged to her brother and that he did not tell her to remove the safe from the house." Further, it is important to note that although the calls were not specifically identified in the affidavit, in other phone calls, Defendant did instruct Breauna to remove the box from the residence. For instance, during the second phone call at 6:08 pm., Defendant told the other woman on the call to "[t]ell [Breauna] to take that motherfucker out of there." Approximately ten minutes later in another call, Defendant told Breauna "Wop about to come get it from you or you can just take it and meet him somewhere." The evidence shows that any inaccuracies in Officer Johannsen's summary of the phone calls were not made to deceive.

Moreover, even if this statement had been made recklessly or with the intent to deceive, striking the statement would not undermine a finding of probable cause. To be constitutionally valid, "a search warrant must be supported by a showing of probable cause." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007). "Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States. v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quotation omitted). [T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000). "The determination of probable cause is made after considering the totality of the circumstances." *Proell*, 485 F.3d at 430.

The reason why Breauna removed the box from the residence was not necessary for a finding of probable cause. Striking the challenged statement about Defendant's instruction to

7

remove the box, the affidavit contains the following information: (1) surveillance footage showed Defendant at the scene of a shots fired incident with a firearm on October 31, 2022; (2) Defendant was on supervised release for a federal firearms conviction at the time; (3) Defendant's residence was searched on November 2, 2022 and no firearms or firearm companion equipment was found; (4) Defendant called Breauna, who had recently been released from jail on a GPS monitor, and told her "not to let anyone fuck with" a box; (5) police learned the "box" was moved to Jackson's residence, which was located within a mile of Breauna's residence; (6) Jackson told officers that Breauna asked her to keep a safe in her house on the same day as Defendant's phone call to Breauna about a "box;" and (7) Breauna told Officer Johannsen after police took the safe that the safe belonged to Defendant. This information is sufficient to show a nexus between contraband and the safe to support issuance of the warrant. Without the challenged statement, the affidavit still contains enough facts to establish a fair probability that contraband or evidence of criminal activity would be found. Officers knew Defendant was interested in a "box," which officers learned through further investigation was a safe that Breauna transferred to Jackson's home. Breauna told Officer Johannsen that the safe belonged to Defendant. Excising the challenged statement from the affidavit would not undermine the finding of probable cause.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Robert Rossiter, Jr. that Defendant's Motion to Request *Franks* Hearing ([Filing No. 60](#)) be denied.

Dated this 23rd day of October, 2023.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

### ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.