IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFFORD WRIGHT, III,<br><br>Defendant. | 8:22CR253<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion to Request *Franks* Hearing (Filing No. 60), filed by Defendant, Clifford Wright, III. The previously assigned magistrate judge[1] entered a Findings and Recommendation (Filing No. 80) recommending that Defendant's Motion for *Franks* Hearing be denied, to which Defendant filed two pro se objections (Filing No. 87; Filing No. 89). Upon review of the Findings and Recommendation, Defendant's objections, and the voluminous amount of pro se filings and motions filed by Defendant in in the interim, the district judge[2] provided the following directions in his Memorandum and Order (Filing No. 111) dated November 14, 2023:

> Much has occurred in this matter since the magistrate judge issued her Findings and Recommendation. Importantly, Wright's attorney has withdrawn from the case and the Court has granted his request to proceed *pro se* (Filing No. 85). Wright has also filed several *pro se* motions requiring the magistrate judge's consideration. Due to these intervening circumstances, and in the interest of judicial efficiency, the present matter is resubmitted to the magistrate judge for further review alongside Wright's other pending *pro se* motions.

(Filing No. 111 at p. 2).

Several important procedural developments have occurred since the Memorandum and Order was filed on November 14, 2023, including the Court's appointment of CJA counsel for Defendant (Filing No. 157) on March 14, 2024. This case was reassigned to the undersigned magistrate judge on April 10, 2024, (Filing No. 159), and on April 15, 2024, the undersigned

---

[1] The Honorable Susan M. Bazis, who at the time was United States Magistrate Judge for the District of Nebraska.

[2] The Honorable Robert F. Rossiter, Jr., United States Chief Judge for the District of Nebraska.

magistrate judge held a status conference with counsel (Filing No. 162) setting an in-court hearing on all pending motions and objections on June 27, 2024.

The undersigned magistrate judge held the hearing in court on June 27, 2024. Defendant was present with his appointed counsel, Stuart J. Dornan. Joseph P. Meyer, Special Assistant United States Attorney, appeared on behalf of the Government. At the hearing, defense counsel agreed to withdraw the pending motions filed by Defendant while he was proceeding pro se, without prejudice. The undersigned magistrate judge also ordered a determination of Defendant's competency. (Filing No. 169).

The only remaining motion under advisement at this time is Defendant's Motion to Request *Franks* Hearing (Filing No. 60). At the June 27 hearing, the undersigned magistrate judge took judicial notice of pages 141 to 152 of Filing No. 62; pages 263 to 264 of Filing No. 95; page 319 of Filing No. 109; and Filing No. 131-1. In addition, the undersigned magistrate judge has reviewed Defendant's Motion to Request *Franks* Hearing (Filing No. 60) and the related briefing (Filing No. 60-1; Filing No. 72), the prior Findings and Recommendation (Filing No. 80), Defendant's Objections (Filing No. 87; Filing No. 89), and the Memorandum and Order (Filing No. 111) resubmitting the motion to the magistrate judge for further review.

In resubmitting the matter, the district judge commented he saw "no reason why, on reconsideration, the magistrate judge could not grant or deny [Defendant]'s motion for a *Franks* hearing herself." (Filing No. 111 at fn. 3). Thus, so that the record is clear, the undersigned magistrate will withdraw the previously issued Findings and Recommendation (thereby rendering Defendant's objections to it moot), and will instead set forth his Memorandum and Order on Defendant's Motion to Request *Franks* Hearing (Filing No. 60) now that the matter has been fully resubmitted for his review. And, like the assigned magistrate judge before him, the undersigned magistrate judge concludes Defendant's request for *Franks* a hearing should be denied.

**FACTUAL BACKGROUND**

On November 15, 2022, a grand jury indicted Defendant for possessing with the intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1); possessing a firearm in furtherance of that crime, in violation of 18 U.S.C. § 924(c)(1)(A); and being felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Filing No. 1). These charges

arise out of an investigation and execution of a search warrant for a Sentry Safe by the Omaha Police Department in late October and early November 2022.

According to an OPD Police Report authored by Omaha Police Department ("OPD") Officer Cole Johannsen ("Officer Johannsen"), on October 31, 2022, Omaha police responded to a report of shots fired at a gas station. (Filing No. 62-2 - Ex. 102). Upon their arrival, officers recovered approximately 60 shell casings. After reviewing surveillance footage, officers determined Defendant was at the shots fired incident with a handgun after identifying him as a registered owner of the vehicle at the scene. At the time, Defendant was on supervised release for a federal firearms conviction. On November 1, 2022, Officer Johannsen obtained a warrant to search Defendant's residence. (Ex. 102).

On the morning of November 2, 2022, Defendant was arrested during a traffic stop near the Douglas County Jail. At the time of the traffic stop, Defendant was driving to the jail to pick up his sister, Breauna Wright, who was being released from jail wearing a GPS tracker. On the same date, shortly following Defendant's arrest, the warrant for Defendant's residence was executed. No firearms or companion equipment was found in the residence. (Ex. 102).

At 11:43 a.m. on November 2, 2022, Defendant called Breauna from the booking area of the jail and told her "[d]on't let nobody fuck with that box in the landing room . . . You hear me." (See Filing No. 75 - Ex. 1; Filing No. 62-3 - Ex. 103A). Breauna told Defendant during the call that she did not know what he was talking about. (Exs. 1, 103A). Officers then attempted to locate the "box" mentioned during the telephone call, learning that the "box" had likely been moved to Inesha Jackson's house, which was located within a mile of Breauna's residence. (Ex. 102; Filing No. 62-1 - Ex. 101). Officers made contact with Jackson at her residence, and Jackson told them that Breauna had come to her house earlier that day and asked to keep a safe in Jackson's garage. Jackson allowed the officers to take the safe. (Exs. 101, 102).

Defendant made four telephone calls to speak to Breauna on November 2, 2022. (Exs. 1, 2, 3, 4). However, the calls were not to Breauna's phone because Breauna indicated her phone was in Defendant's vehicle. (Exs. 1, 103A). The second call occurred at approximately 6:00 p.m. (Filing No. 75 - Ex. 2). During this call, Defendant spoke to another woman because Breauna did not have her phone. (Exs. 1, 2, 103A). Defendant learned from the other woman during the call that officers had confiscated the safe and said, "Tell her [Breauna] to take that motherfucker out

3

of there." (Ex. 2; Ex. 102). During the third call that occurred at 6:18 p.m., Defendant spoke to Breauna about the "box":

> Defendant: Wop about to come get it from you or you can just take it and meet him somewhere.
> Breauna: The cops got it.
> Defendant: The cops took it from you?
> Breauna: They took it from my home girl's house.
> Defendant: It was at your home girl's?
> Breauna: Yeah.
> Defendant: Why?
> Breauna: Cuz I didn't want it in my house. I don't know what's in it. So I wanted it somewhere where I didn't have to worry about the police busting in the house. I'm on the tracker. So as soon as you said something about the box in my house, I got that motherfucker out.

(Exs. 3, 103B).

Breauna further stated that police had asked her for the code to the safe and the police were "about to break it open" after getting a warrant:

> Defendant: How did they take that motherfucker?
> Breauna: They went to Tay Tay's house and took it.
> Defendant: How the fuck they take it from Shay Shay's house? Did Shay Shay tell them it was there?
> Breauna: They followed me. I guess . . . my house. Or they GPS'd me after I got off the phone with you.
> Defendant: How the fuck gonna say it's mine?
> Breauna: I told them, I don't know who the fuck box it is. I know you said there's a box in my house, so I got the motherfucker out of my house. That's exactly what I told them. I don't know who's fucking box it is. I just know you said a box. I just got out of motherfucking jail. I'm not going to jail for no motherfucking box I had nothing to do with.

(Exs. 3, 103B). In his next call to Breauna, Defendant indicated he was telling her "not to let anyone mess with his Xbox." Officers did see an Xbox in Defendant's residence, but did not see one in Jackson's garage. ([Filing No. 102](#)).

On November 2, 2022, Officer Johannsen then prepared an affidavit to support a warrant for the search of the safe. Officer Johannsen's affidavit included much of the above information, including:

- Omaha police responded to a shots fired call on October 31, 2022, and recovered 60 spent shell casings.

4

- Surveillance footage led to the identification of Defendant at the scene, arriving in a car registered to him.
- The surveillance footage showed Defendant get out of his vehicle, raise his right hand pointing the weapon in the general direction the shots were coming from, and appears to attempt to fire the weapon, but the firearm appeared to malfunction and not fire.
- Defendant briefly re-entered his vehicle, then exited brandishing the weapon to the southeast in an attempt to fire.
- Defendant went back to his vehicle and left the scene.
- Defendant was on supervised release for a federal firearms conviction.
- Police searched Defendant's residence pursuant to a warrant during the morning of November 2, 2022, and did not locate any firearms or companion equipment.
- Defendant was arrested in front of the Douglas County jail following a traffic stop. Defendant was going to the jail to pick up his sister.
- Police got information about a jail call Defendant made to his sister, Breauna. During that call, Defendant told Breauna to "not let anyone fuck with that box in the room" (affidavit indicated this was a quote from Defendant).
- Breauna was on active GPS monitoring when she was released from the Douglas County Jail.
- Police received information that the "box" was likely transported to a third-party's (Jackson's) residence.
- Jackson's residence was within one mile of Breauna's house.
- Officers contacted Jackson at her residence. Jackson stated that Breauna showed up at her residence earlier in the day and asked if she could put her "safe" (word "safe" not in quotations in the affidavit) in the garage. The third-party turned the safe over to officers, which was found in the garage.
- After recovering the safe, Officer Johannsen called Breauna, who "acknowledged that the safe belonged to her brother and that he did not tell her to remove the safe from the house . . . Breauna also acknowledged that [Defendant] told her not to let anyone mess with the safe" (affidavit did not indicate this was a quote).
- Breauna did not know the code to the safe and said she does not mess with her brother's stuff.
- Additional follow-up was conducted into additional jail calls where Defendant called Breauna and stated, "how did they get the box" (affidavit indicated this was a quote of Defendant's remarks) and "how are they going to know it is mine" (quotation not indicated in the affidavit).
- Breauna responded to Defendant, stating "I didn't tell them it was yours but I told them that you told me to move the box so I moved the box" (quotation not indicated in the affidavit).

(Ex. 101). A Nebraska county court judge signed the warrant, and officers executed a search of the safe at approximately 7:48 p.m. on November 2, 2022, locating firearms and fentanyl pills in the safe. (Ex. 101).

Defendant filed a motion requesting a *Franks* hearing on the basis that Officer Johannsen's affidavit intentionally included false statements, which if excised from the affidavit, would render the affidavit lacking in sufficient probable cause. (Filing No. 60). Specifically, Defendant contends Officer Johannsen's police reports "detailed the jail calls differently" than outlined in the affidavit, and that "there is no support" for the affidavit's statements that Defendant told Breauna to "move the box" (or safe), or that Defendant told Breauna that he wanted to protect a "safe." (Filing No. 60-1 at pp. 3-4).

## DISCUSSION

A criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination. See *Franks v. Delaware*, 438 U.S. 154 (1978). In order for a defendant to prevail on a request for a *Franks* hearing, the defendant must make a "substantial preliminary showing" that (1) the affiant "knowingly and intentionally" made reckless false statements or omissions and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause. *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). In order to obtain an evidentiary hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine, and allegations of "deliberate falsehood . . . must be accompanied by an offer of proof," which "point out specifically the portion of the warrant affidavit that is claimed to be false" and "should be accompanied by a statement of supporting reasons." *United States v. Hines*, 62 F.4th 1087, 1093 (8th Cir.), *cert. denied*, 144 S. Ct. 160 (2023) (quoting *Franks*, 428 at 171-72). "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* "The requirement of a substantial preliminary showing is not lightly met[.]" *Id.* (quoting *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013)); see also *United States v. Blair*, 93 F.4th 1080, 1084 (8th Cir. 2024), *reh'g denied*, No. 22-3573, 2024 WL 1611475 (8th Cir. Apr. 15, 2024) (reaffirming the required preliminary showing is "not easily met.").

Defendant contends the affidavit supporting the search warrant in this case contained two intentionally false statements. First, Defendant challenges the affidavit's statement that "Breauna acknowledged that [Defendant] told her not to let anyone mess with the safe." (Filing No. 60-1 at p. 4). Defendant contends this statement is false because he did not use the word

6

"safe," nor did he tell Breauna not to let anyone "mess with a safe." Defendant also states this statement is false because Breauna never "acknowledged" that Defendant told her not to let anyone mess with the safe. ([Filing No. 60-1 at p. 4](Filing No. 60-1 at p. 4)).

Defendant's argument regarding the falsity of this statement is premised upon his incorrect assumption that this information came from Defendant's recorded jail calls. However, when this statement is read in context in the affidavit, it is clear this statement came from Officer Johannsen's phone call with Breauna, not from the jail phone calls between Defendant and Breauna. The entirety of this section of the affidavit provides:

> After recovering the safe from the garage at [Jackson's residence] Affiant Officer made contact with . . . Breauna via phone. . . . Breauna acknowledged that the safe belonged to her brother and that he did not tell her to remove the safe from the house. . . . Breauna also acknowledged that [Defendant] told her not to let anyone mess with the safe. . . . Breauna further stated that she did not know the code to the safe and that she doesn't mess with her brother's stuff. Additional follow-up was conducted into additional jail calls where [Defendant] calls . . . Breauna and states "how did they get the box" and how are they going to know it is mine. . .

(Ex. 101). Thus, Defendant's argument regarding the falsity of the statement fails on its face because it is clear that Officer Johannsen was recounting his telephone conversation with Breauna, not Defendant's jail call with Breauna. And, Defendant has offered no affidavit or other evidence indicating Breauna did not make the statements attributed to her by Officer Johannsen, nor did Defendant attempt to explain why this information could not be provided.

Additionally, in the context of the investigation and as set forth in the affidavit, it is clear that the "box" mentioned in Defendant's phone calls is, in fact, the safe that was searched pursuant to the warrant. In his affidavit, Officer Johannsen indicated that officers spoke to Jackson, who told them that Breauna brought a "safe" to her house. Again, Defendant has not offered any evidence to challenge the accuracy of the statement Officer Johannsen's attributed to Jackson. In the calls between Breauna and Defendant, Breauna stated she took the "box" to her friend's house. Taking this information together, it is apparent the "box" mentioned in the calls and the "safe" referred to by Jackson are the same thing. Officer Johannsen's use of the word "safe" in his affidavit as opposed to "box" was not false or misleading.

Defendant next challenges the affidavit's statement that in a call with Defendant, "Breauna responded with I didn't tell them it was yours, *but I told them that you told me to move the box* so I moved the box." (Ex. 102) (emphasis added). Defendant argues this statement is false because

7

his jail call does not reflect that Defendant instructed Breauna to move the box. Defendant points out that Officer Johannsen's police report on November 5, 2022, also indicates that Defendant did not instruct Breauna to move the box. Defendant argues that this false and misleading statement provides the otherwise missing nexus between him and the safe. (Filing No. 60-1 at pp. 5-6).

Defendant is correct that neither the jail call nor Officer Johannsen's November 5 police report reflect that Breauna told Defendant during the recorded jail call, "I told them that you told me to move the box." In one call with Defendant, Breauna stated, "I told them, I don't know who the fuck box it is. I know you said there's a box in my house, so I got the motherfucker out of my house. That's exactly what I told them. I don't know who's fucking box it is. I just know you said a box." In his November 5 report, Officer Johannsen indicated that "Breauna acknowledged that the safe belonged to her brother and that he did not tell her to remove the safe from the house." But despite the discrepancies, Defendant has not shown the statement was knowingly or intentionally made in an effort to mislead the issuing judge. And, even if that statement was excised, probable cause for the warrant would still exist.

First, there is no indication that the statement in the affidavit that Defendant told Breauna to remove the box from the residence was meant to be misleading. At most, the statement was an innocent mistake, which is an insufficient basis for a *Franks* hearing. The mistaken nature of the statement is evidenced by Officer Johannsen's statement earlier in the very same paragraph, "Breauna acknowledged that the safe belonged to her brother and that he did not tell her to remove the safe from the house." Additionally, in another recorded phone call (just not with Breauna), Defendant *did* appear to give instructions for Breauna to remove the box from the residence. During Defendant's recorded phone call at 6:08 pm., Defendant told another woman to "[t]ell [Breauna] to take that motherfucker out of there." Approximately ten minutes later in another call, Defendant told Breauna, "Wop about to come get it from you or you can just take it and meet him somewhere." Therefore, to the extent the evidence shows the statement was technically inaccurate, such inaccuracy was not a "knowingly and intentionally" or recklessly false statement. See *United States v. Neal*, 528 F.3d 1069, 1072 (8th Cir. 2008) (quoting United States v. Schmitz, 181 F.3d 981, 986-87 (8th Cir. 1999) ("To show reckless disregard for the truth, [the court] do[es] not look simply at whether a statement included in the affidavit was true; rather, [the court] ask[s] whether, when looking at all the evidence available to the officer, the officer 'must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the

information he [or she] reported.'").

Moreover, even assuming the statement was made recklessly or with the intent to deceive, excising the statement from the warrant affidavit would not undermine the finding of probable cause. To be constitutionally valid, "a search warrant must be supported by a showing of probable cause." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007). "Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States. v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quotation omitted). [T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000). "The determination of probable cause is made after considering the totality of the circumstances." *Proell*, 485 F.3d at 430.

As the Government points out, the reason why Breauna removed the box from the residence was not necessary for a finding of probable cause. (Filing No. 72 at p. 12). Even if that challenged statement was excised from the affidavit, the affidavit still contained the information that: (1) surveillance footage showed Defendant at the scene of a shots fired incident with a firearm on October 31, 2022; (2) Defendant was on supervised release for a federal firearms conviction at the time; (3) Defendant's residence was searched on November 2, 2022 and no firearms or firearm companion equipment was found; (4) Defendant called Breauna, who had recently been released from jail on a GPS monitor, and told her "not to let anyone fuck with" a box; (5) police learned the "box" was moved to Jackson's residence, which was located within a mile of Breauna's residence; (6) Jackson told officers that Breauna asked her to keep a safe in her house on the same day as Defendant's phone call to Breauna about a "box;" and (7) Breauna told Officer Johannsen after police took the safe that the safe belonged to Defendant. This information is sufficient to show a nexus between contraband and the safe to support issuance of the warrant. Without the challenged statement, the affidavit still contains enough facts to establish a fair probability that contraband or evidence of criminal activity would be found inside the safe. Officers knew Defendant was interested in a "box," which officers learned through further investigation was a safe that Breauna transferred to Jackson's home. Breauna told Officer Johannsen that the safe belonged to Defendant. Excising the challenged statement from the affidavit would not undermine the finding of probable cause.

In consideration of the above, the undersigned magistrate judge finds that Defendant has not made a "substantial preliminary showing" pursuant to *Franks*, and thus his motion will be denied. Upon consideration,

**IT IS ORDEDED**:

1. The previous Findings and Recommendation ([Filing No. 80](#)) is withdrawn;
2. Defendant's Objections to the Findings and Recommendation ([Filing No. 87](#) and [Filing No. 89](#)) are denied as moot; and
3. Defendant's Motion to Request *Franks* Hearing ([Filing No. 60](#)) is denied.

Dated this 22nd day of July, 2024.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Memorandum and Order shall be filed within fourteen (14) days after being served with a copy of this Memorandum and Order. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.