IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLIFFORD WRIGHT III,<br><br>Defendant. | 8:22CR253<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on defendant Clifford Wright III's ("Wright") *pro se* "Motion to Dismiss for [O]utrageous [G]overnment [C]onduct and Motion for a New Trial" (Filing No. 497). *See* Fed. R. Crim. P. 33. Wright has also filed two motions for judgment of acquittal (Filing Nos. 499, 508). *See* Fed. R. Crim. P. 29. The government filed an omnibus brief in response to Wright's post-trial motions (Filing No. 527). Having carefully considered the parties' arguments and the record in this case, the Court denies Wright's motions.

I.  **BACKGROUND**

On December 21, 2021, Wright was sentenced for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Filing No. 41 in Case No. 8:21CR67). He was sentenced to 20 months in the Bureau of Prisons and 3 years of supervised release. A condition of Wright's supervised release prohibited him from owning, possessing, or having "access to a firearm." *See* 18 U.S.C. §§ 922(g)(1), 3563(b)(8). On November 1, 2022, while Wright was on supervised release, his probation officer filed a Petition for Warrant or Summons for Offender Under Supervision (Filing No. 43 in Case No. 8:21CR67) alleging Wright appeared "on video footage near 30th and Martin Avenue in Omaha, Nebraska[,] shooting a firearm."

A grand jury indicted Wright two weeks later on one count of being a felon in possession of a firearm (Filing No. 1). *See* 18 U.S.C. § 922(g)(1). The Court appointed counsel to represent Wright both with respect to that charge and the alleged supervised release violation. On the government's oral motion, Wright was detained pending further proceedings (Filing No. 11).

About a month later, a grand jury returned a superseding indictment (Filing No. 16) charging Wright with three offenses. Count I charged Wright with possessing with intent to distribute forty grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Count II accused him of possessing a firearm in furtherance of that drug-trafficking crime, in violation of 18 U.S.C. 924(c)(1)(A). And Count III charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8). A second superseding indictment (Filing No. 311) came much later, specifically alleging Wright committed those offenses "[o]n or about October 31, 2022, to November 2, 2022."

The pretrial proceedings continued in Wright's case for quite some time. Some of that time is attributable to Wright's numerous pretrial motions (Filing Nos. 91-103, 133, 137-45, 261, 274, 281-82, 284-85, 287-90, 297-300) and requests to extend the pretrial-motion deadline (Filing No. 420). In addition to the extensive pretrial-motion litigation, Wright was evaluated twice: first, for mental competency (Filing No. 169) and second, for purposes of an affirmative insanity defense (Filing No. 316).

Another factor complicating this case has been Wright's repeated disagreements and dissatisfaction with his appointed counsel. Just a few months into this case, Wright's first attorney moved to withdraw based on Wright's complaints about him (Filing No. 27). The Court permitted that attorney to withdraw and appointed Wright another attorney (Filing No. 34). Just a few months later, the second attorney likewise sought to withdraw from Wright's case (Filing No. 48), referring to a "material breakdown in the attorney-client relationship," partially based on the attorney's refusal to "file various pre-

2

trial motions that" he did not believe had merit. The Court granted his withdrawal motion and appointed a third attorney (Filing No. 53).

Not too long after, Wright filed a *pro se* motion to appoint new counsel, and that third attorney also withdrew from Wright's case (Filing No. 83). The magistrate judge held a hearing without the government present at which both Wright and his counsel spoke (Filing No. 85). At the hearing, Wright requested to proceed *pro se*. The magistrate judge engaged Wright in a lengthy and detailed discussion about self-representation under *Faretta v. California*, 422 U.S. 806, 834-36 (1975), and granted Wright's request. Wright then filed various *pro se* pretrial motions. He ultimately requested appointed counsel in February 2024, at which time the magistrate judge appointed his fourth and final attorney (Filing No. 155). In light of that appointment, Wright withdrew his pending *pro se* motions (Filing No. 169), and the Court overruled his earlier objections to the magistrate judge's denial of his request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) (Filing No. 182).

Wright's counsel went on to file multiple timely pretrial motions on his behalf (Filing Nos. 195, 197, 199, 202, 204, 207, 209), all of which the Court ruled on in due course, and many of which disposed of the same issues Wright raises now. Wright then requested that his fourth attorney be replaced. The magistrate judge denied Wright's motion. Wright then knowingly and voluntarily demanded that he proceed *pro se*. Following another extensive colloquy under *Faretta*, the magistrate judge allowed Wright to represent himself and appointed his fourth attorney as stand-by counsel.

The matter proceeded to a jury trial on May 27, 2025.[1] The evidence at trial established that Wright first arrived at the gas station near 30th and Martin Avenue on Halloween night 2022. Wright initially parked at a gas pump but left without pumping gas or exiting his vehicle. He then returned to the gas station after the bars closed around

---

[1] The Court also confirmed Wright's decision to proceed *pro se* at the beginning of trial.

3

2 a.m. the next day. Again, he parked by a pump for about fifteen minutes but did not pump gas. Multiple people approached Wright's vehicle while he was at the pump to engage him in conversation. Additionally, several people entered Wright's vehicle, stayed for a short time, and then left. After gun fire then broke out across the street, Wright exited his vehicle brandishing a handgun.

Omaha Police Department officers identified Wright from surveillance footage and took him into custody. While in jail, Wright made several phone calls about a "box." Based on these recorded calls, police located the box which turned out to be a safe. Police then sought a search warrant for the safe. A subsequent search revealed a large quantity of fentanyl pills and three firearms. Special Agent Anthony Sorenson ("Sorenson") from the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that one of the firearms recovered from the safe was visually consistent with the distinctive, two-tone firearm Wright was seen holding at the gas station incident.

On June 6, 2025, a jury found Wright guilty of all three counts. Following the verdict, Wright filed the present motions seeking either a new trial or a judgment of acquittal.[2]

## II. DISCUSSION

### A. Motion for a New Trial

Wright seeks a new trial under Rule 33 based on a plethora of issues, most of which the Court has repeatedly resolved (Filing Nos. 182, 420). Under that rule, "the [C]ourt may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Evaluating a motion for a new trial "requires the district court to balance the alleged errors against the record as a whole and evaluate the fairness of the trial." *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988). "In considering a motion for a new trial, the district court is permitted to 'weigh the evidence,

---

[2]The motions contain some duplicative arguments. The Court has addressed each of Wright's arguments in the section that is most appropriate.

disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *United States v. Schropp*, 829 F.3d 998, 1005 (8th Cir. 2016) (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)). However, new trials under Rule 33 are "reserved for exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (quoting *United States v. Johnson*, 474 F.3d 1044, 1051 (8th Cir. 2007)). The Court should exercise its authority to grant a new trial sparingly and "only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *Id*. at 505 (quoting *United States v. Vore*, 743 F.3d 1175, 1181 (8th Cir. 2014)).

In support of his motion for a new trial, Wright argues the government (1) delayed disclosing exculpatory evidence in violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and Federal Rule of Criminal Procedure 16 (which governs the discovery process in criminal cases);[3] (2) "provided materially false information to the judicial officer" in violation of *Napue v. Illinois*, 360 U.S. 264 (1959); (3) violated Federal Rule of Evidence 901 by redacting Wright's Facebook and text messages without Court approval; (4) improperly coached and led witnesses throughout trial; (5) improperly vouched for government witness Kelly Rynkol's ("Rynkol") credibility; and (6) made improper remarks in closing arguments amounting to prosecutorial misconduct. The Court will respond to each of these arguments in turn.

### 1. Alleged *Brady* and Rule 16 Violations

Wright continues to claim that he was denied certain discovery. Specifically, he alleges the government violated *Brady*, by failing to disclose "exculpatory evidence" for over a year (Filing No. 497 at 2). Without identifying what exculpatory evidence he was

---

[3]Wright also argues this delay amounts to a violation of his "Due Process Protection Act Rights" (Filing No. 497 at 1). The Due Process Protections Act, Pub. L. No. 116-182, § 1, 134 Stat. 894, 894-95 (2020), requires district courts to enter an order confirming the government's obligations to disclose exculpatory evidence under *Brady*.

5

denied, Wright states he received the "Affidavit in support of Order Identifying Physical Characteristics" after October 23, 2023.[4] This delay, Wright alleges, amounts to *Brady* and Rule 16 violations.

The government dubiously counters that Wright has made no showing of prejudice related to any alleged discovery violations because "most of the evidence, including jail calls and cell phone evidence, was created by [Wright]" (Filing No. 527).

Rule 16 requires that, "upon [Wright's] request, the government disclose any relevant written or recorded statement by [Wright] if: the statement is within the government's possession, custody, or control and the government knows—or through due diligence could know—that the statement exists." *United States v. Bull*, 8 F.4th 762, 768 (8th Cir. 2021) (quoting *United States v. Hyles*, 479 F.3d 958, 967 (8th Cir. 2007)); *see also* Fed. R. Crim. P. 16(a). Wright has not pointed to any statement he made that the government had in its possession but did not disclose. The affidavit Wright references was written and sworn by Omaha Police Officer Cole Johannsen ("Johannsen"). Thus, Wright's claims under Rule 16 are not fertile grounds for relief.

To have a cognizable claim under *Brady*, Wright must establish that the government failed to disclose "material evidence, whether impeachment or exculpatory, in its possession that is favorable to the defendant." *United States v. Ruzicka*, 988 F.3d 997, 1006 (8th Cir. 2021) (quoting *United States v. Quintanilla*, 25 F.3d 694, 698 (8th Cir. 1994). Evidence is material for *Brady* purposes "only if there is a 'reasonable probability' that, had it been disclosed, 'the result of the proceedings would have been different.'" *United States v. Hayes*, 44 F.4th 1134, 1142 (8th Cir. 2022) (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). "[U]disclosed evidence, even if favorable to

---

[4]The Court has explained to Wright that he did not receive written discovery until after October 23, 2023, because he had previously been represented by counsel and the discovery materials were being sent to his counsel of record. When Wright demanded to proceed *pro se*, the Court ordered written discovery to be sent directly to Wright (Filing No. 85).

[Wright]" does not constitute a *Brady* violation if the undisclosed evidence is "not material." *Ruzicka*, 988 F.3d at 1006.

Wright repeatedly argued in pretrial motions that there were false statements in various warrant affidavits because they did not precisely mirror Johannsen's police report and the recordings of Wright's jail calls. For example, in Wright's first jail call to his sister, Breauna Wright ("Breauna") he told her, "[d]on't let nobody fuck with that box in the landing room . . . You hear me." (Filing No. 172). In the second call that day, Wright asked another woman to tell Breauna "to take that motherfucker out of there." Officers then attempted to locate the "box" and obtained information that it had been moved to the home of a third-party, Inesha Jackson ("Jackson"). Jackson gave the officers a safe that Breauna had asked her to keep in her garage.

After police recovered the safe, Wright continued to make calls about the "box," asking Breauna, "how did [police] get the box?" and "how are they going to know it is mine?" On November 2, 2022, Officer Johannsen prepared an affidavit to support a search warrant for the safe. Johannsen's affidavit recounted the events at the gas station, the jail calls, recovering the safe, and how Breauna acknowledged to police that the safe belonged to Wright. Wright argued these statements were materially false because he did not use the word "safe" to describe the "box" in his phone calls. The Court concluded there was no evidence this statement was false because it was based on Johannsen's conversations with Breauna, not on Wright's jail calls. Moreover, Wright failed to offer any probative evidence challenging the statement that the "box" was the safe police recovered, particularly given Breauna's statement to Wright in a jail call that she took the "box" to her friend's house.

Wright also challenged the affidavit statement that in a call with Wright, "Breauna responded with I didn't tell them it was yours, *but I told them that you told me to move the box so I moved the box*." Wright argued that this statement was false because he did not tell Breauna to move the box in the jail call. The magistrate judge found that the

7

discrepancies between the various warrant affidavits and Wright's jail calls were not material (Filing Nos. 172 at 9; 280 at 3). Wright now rehashes the same facts and labels them a *Brady* violation.

The Court has repeatedly rejected this argument (Filing Nos. 182, 420). Wright raised this issue before in his "Motion to Suppress Order for Identifying Characteristics" (Filing Nos. 126-127). That pretrial motion also mirrored his "Motion to Request *Franks* Hearing (Filing No. 60).[5] Before trial, the magistrate judge held hearings to determine whether any *Brady* or other issue existed (Filing No. 316). The discrepancies between the phone calls and the affidavit's summary of those calls are still not material and do not constitute a *Brady* violation. *See Ruzicka*, 988 F.3d at 1006.

### 2. Alleged *Napue* Violations

Wright next argues that a new trial is warranted because the government "provided a judicial officer false information" during his arraignment when the government "indicat[ed] all discovery material had been disclosed." (Filing No. 497 at 3). Wright claims the government knew that the November 2nd search warrant affidavit "contained false testimony" and "conceal[ed] this exculpatory evidence" in violation of *Napue*. Furthermore, Wright argues that witnesses at trial provided false testimony and evidence. As an example, Wright argues witnesses Rynkol and Johannsen testified falsely.

A *Napue* violation occurs when the government "knowingly submit[s] perjured testimony to the jury." *Ruzicka*, 988 F.3d at 1003. To establish a due-process violation under *Napue*, Wright "must show that the prosecution knowingly solicited false testimony or knowingly allowed it 'to go uncorrected when it appear[ed].'" *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025) (quoting *Napue*, 360 U.S. at 269). "If [Wright] makes that showing, a new trial is warranted 'so long as the false testimony may have

---

[5]The "Affidavit in support of Order Identifying Physical Characteristics" that Wright takes issue with now was sworn on November 4th by Johannsen and is substantially similar to the other search-warrant affidavits he authored.

had an effect on the outcome of the trial.'" *Id.* The materiality standard requires that Wright "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

Beyond his own reassurance, Wright does not offer any evidence to support his claim that witness testimony was false, nor has he made any showing that the government knowingly solicited false testimony. The government's allegedly false statement at Wright's December 19, 2022, arraignment that "all discovery had been disclosed" is not the sort of statement that supports a *Napue* violation. Moreover, Wright was able to cross examine witnesses at trial. It was up to the jury to determine whether witness testimony was credible. *See United States v. Big D Enters., Inc.*, 184 F.3d 924, 931 (8th Cir. 1999) ("The jury is the sole arbiter of the truthfulness or believability of a witness's testimony.").

Wright also asserts that he is entitled to a new trial because the government violated *Brady* and *Napue* when it "provided materially false information to the judicial officer in relation to the cell phone data extraction declaring all cell phone data information had been disclosed on 'March 20, 2025'" (Filing No. 497 at 6-7). Again, Wright does not identify what information from his own cell phone he was not given access to or how that evidence would be exculpatory. It is far from clear the government's statement at the March 20, 2025, hearing that all cell phone data had been disclosed constituted "false testimony [that] may have had an effect on the outcome of the trial." *Glossip*, 604 U.S. at 246 (quoting *Napue*, 360 U.S. at 269). Thus, the Court does not find a *Brady* or *Napue* violation occurred.

### 3. Alleged Rule 901 Violations

Wright next argues the government solicited "and presented false evidence" to "illustrate drug[] transactions" on Halloween night by arguing that Wright's text messages to Britney Prince ("Prince") were evidence that Wright was "looking for customers" at the gas station (Filing No. 497 at 8). According to Wright, the fact that the

9

government redacted Prince's address and another person's name in the text-message exchange shows that his messages were altered to "falsely demonstrate a false drugs transaction." Wright alleges this a "violation of Federal Rule of Evidence 901" because the messages were redacted "without prior approval by the Court[.]"

Wright repeatedly argued throughout trial that certain evidence was incomplete or altered. At trial, Wright argued that the government's use of only portions of the phone downloads violated Rule 901. Wright was given the opportunity to provide additional portions of those downloads and opted not to do so.

As noted on several occasions, the Facebook messages and other evidence used by the government, which were voluminous, were admittedly edited to provide only pertinent information. Wright was given access to all the messaging about which he complained both during discovery and at trial. Although he raised this issue as an objection, he was never able to point to the portions of the messages that he felt painted a different picture.[6]

Some messages were altered and redacted because the Court ordered the redactions based on Wright's motion in limine regarding gang references. Nevertheless, Wright complained throughout trial that these messages were redacted. As discussed on several occasions at sidebar, the Court required redaction of overt gang references. The Court did not require removal of a handful of references that only Wright thought might be construed as gang references. Furthermore, the Court instructed government witnesses not to make any references to gangs or gang involvement in the charged crimes, and advised the jury that gangs were not an issue in this case. Wright's argument that evidence was improperly presented because it was "altered" by the removal of overt references is disingenuous at best.

---

[6]Wright makes a similar argument that the government redacted and edited his Facebook messages without Court approval to "falsely illustrate a drug transaction on October 31, 2022, at the gas station" in his first motion for judgment of acquittal as well (Filing No. 499 at 1). They fare no better here.

10

### 4.  Alleged Improper Coaching

Wright asserts he is entitled to a new trial because the government engaged in prosecutorial misconduct by "coach[ing] and lead[ing] witness [sic] into misleading testimony" (Filing No. 497 at 9).  To obtain relief on a claim of such prosecutorial misconduct, Wright "must show '(1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct affected the defendant's substantial rights so as to deprive him of a fair trial.'"  *United States v. Hunter*, 770 F.3d 740, 742 (8th Cir. 2014) (quoting *United States v. New*, 491 F.3d 369, 377 (8th Cir. 2007)).

While the government did ask leading questions at times, Wright—unfamiliar with trial objections as the Court warned at the *Faretta* hearings—did not object.  The Court nonetheless admonished the government about leading questions when it believed government counsel was overreaching.  *See United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013) (noting that "it is appropriate for district court to apply plain error review to a defendant's motion for new trial" where "neither party objected to [issues]" during trial); *McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988) ("A defendant's failure to object to an alleged error generally precludes him from asserting the claimed error in a motion for new trial.").  In the Court's view, at no time did any of the leading questioning "mislead the jury," "unfairly infect the trial," *id.* at 1320, nor affect Wright's "substantial rights so as to deprive him of a fair trial."  *Hunter*, 770 F.3d at 742.

### 5.  Alleged Improper Vouching

Wright claims the government improperly vouched for the testimony of Rynkol.  Improper vouching may occur "when a prosecutor refers to facts outside the record, implies that the witnesses' testimony is supported by facts not available to the jury, gives an implied guaranty of truthfulness, or expresses a personal opinion regarding witness credibility."  *United States v. Beaman*, 361 F.3d 1061, 1065 (8th Cir. 2004).

Wright never specifically identifies which statement or statements he thinks constituted improper vouching.  A review of the government's closing argument reveals

no such vouching for Rynkol. In closing arguments, the government summarized Rynkol's testimony and argued that it corroborated other evidence in the case. The government also explained how Rynkol's testimony provided context for the meaning behind certain text messages. Simply discussing her testimony and the context in which it was given is not "vouching." *See United States v. Cottier*, 908 F.3d 1141, 1148 (8th Cir. 2018) (discussing how the government's remarks in closing arguments that a witness's testimony was "corroborated" and "truth[ful]" were not improper vouching because they were made to "'explain why the jury might find [the witness] credible' based on the evidence before the jury[.]") (quoting *Bass v. United States*, 655 F.3d 758, 761 (8th Cir. 2011)). Here, the government never "refer[red] to facts outside the record" nor did it "give[] an implied guaranty of truthfulness." *Beaman*, 361 F.3d at 1065. In addition to the fact that the statements were not improper vouching, "[h]ere, there was no motion for mistrial, and the comment[s] w[ere] made in the midst of the prosecutor's lengthy argument based on the trial evidence." *United States v. Obi*, 25 F.4th 574, 581 (8th Cir. 2022).

### 6.   Alleged Prosecutorial Misconduct During Closing Arguments

Wright's claim that the government engaged in prosecutorial misconduct by "falsely declar[ing] during closing arguments that Special Agent Sorenson testified the gun in the video footage was the exact same gun as the Beretta 92" (Filing No. 508) also fails.[7]

In its closing, the government argued the handgun Wright is seen holding in the surveillance footage is the same handgun as the Beretta the police found in the safe with the fentanyl pills and two other guns. In making this argument, the government referenced Sorenson's testimony that the gun was visually consistent with the distinctive, two-toned Beretta police recovered from the safe.

---

[7]Wright brought these claims for prosecutorial misconduct in his second motion for judgment of acquittal (Filing No. 508), however the Court considers them as part of his Motion for a New Trial.

It is not prosecutorial misconduct for the government to summarize the evidence and highlight "reasonable inferences that may be drawn from [the evidence]." *United States v. Eagle*, 515 F.3d 794, 805 (8th Cir. 2008); *see also United States v. Plumley*, 207 F.3d 1086, 1094 (8th Cir. 2000) (explaining that it was not misconduct for the government to state in closing argument "[h]ere's what happened in my view" because it is not an expression of belief in the defendant's guilt, and is akin to stating "[h]ere is what the evidence established"). The government's remark that the gun at the gas station is the same as one of the guns later found in the safe is an argument about what the evidence established, not an "unvarnished expression of his personal belief in [Wright's] guilt." *Plumley*, 207 F.3d at 1094. Again, Wright did not object to the government's closing. *See Amaya*, 731 F.3d at 764; *McBride*, 862 F.2d at 1319.

Finally, Wright argues that the government's statement in its closing argument that Wright was "protect[ing] his turf" was an overt gang reference "not relevant or related" to the charges (Filing No. 499 at 7). The government counters that (1) Wright did not object to the statement and (2) the statement was not a gang reference because "drug dealers can also protect their turf" (Filing No. 527). The government made this remark while recounting the gas-station incident to argue Wright possessed a firearm in furtherance of drug trafficking.

The Court is not convinced that "protecting turf" is an inherent gang reference. But even if it were, "generic and fleeting testimony" about gang activity can be admissible as intrinsic evidence to "provide a total picture" of the events surrounding the charged crime. *United States v. Payne-Owens*, 845 F.3d 868, 872 (8th Cir. 2017). In *Payne-Owens*, the Eighth Circuit decided the government's mention that the defendant was a "real [gang member]" who was "calling out other [] gang members for being fake" in closing arguments was not reversible error because it was fleeting and the district court issued two limiting instructions. 845 F.3d at 874. The "generic and fleeting" reference that Wright brandished a firearm to protect his turf was made in the context of

summarizing other permissible evidence during closing argument, not as "[g]eneral evidence as to gang culture, aimed at simply establishing a violent or lawless culture[.]" *Id.* at 872. Furthermore, Wright did not object to this statement at trial. *See Amaya*, 731 F.3d at 764; *McBride*, 862 F.2d at 1319. Thus, the Court does not find that Wright was deprived of a fair trial and his motion for a new trial is denied.

### B. Motions for Judgment of Acquittal

Wright alternatively argues the Court should enter a judgment of acquittal, raising many of the same issues discussed above and throughout this case (Filing Nos. 499, 508). Under Rule 29(c)(2), the Court may set aside Wright's guilty verdict and enter a judgment of acquittal only if, after viewing the evidence in the light most favorable to the jury's verdict, "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Hardin*, 889 F.3d 945, 949 (8th Cir. 2018) (quoting *United States v. Nshanian*, 821 F.3d 1013, 1017 (8th Cir. 2016)). In reviewing the present motions, the Court "accept[s] all reasonable inferences that support the verdict," *United States v. Magallon*, 984 F.3d 1263, 1288 (8th Cir. 2021) (quoting *United States v. Keys*, 721 F.3d 512, 518-19 (8th Cir. 2013)), but "does not assess the credibility of witnesses or weigh evidence." *Id.* (citing *United States v. Starr*, 533 F.3d 985, 997 (8th Cir. 2008)).

#### 1. Sufficiency of the Evidence

Wright contends the evidence was insufficient to find him guilty on any of the three counts. He specifically attacks the sufficiency of the evidence for Count II. To establish that Wright possessed a firearm in furtherance of a drug-trafficking crime in violation of § 924(c)(1)(A), the government had to "prove a nexus between [Wright's] possession of the firearm and the drug crime." *United States v. Goodrich*, 739 F.3d 1091, 1098 (8th Cir. 2014) (quoting *United States v. Close*, 518 F.3d 617, 619 (8th Cir. 2008)). While this requires more than mere simultaneous possession, "[t]he jury may infer that the firearm was so used 'when it is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking.'" *Id.*

14

Stuck with the video of him holding a gun, Wright claims that there is insufficient evidence that he was engaged in drug transactions at the gas station on Halloween night or that he was "looking for customers." Although the video at the gas station did not conclusively show a drugs-for-money exchange at Wright's car window, a review of all the evidence in context would allow a reasonable jury to determine that drug transactions had occurred. *See United States v. Barrow*, 287 F.3d 733, 736-37 (8th Cir. 2002) (explaining that possession with intent to distribute may be satisfied by circumstantial evidence). The jury also saw text messages from Wright leading up to his arrest, which the government argued was evidence that Wright was looking for customers at the gas station. The surveillance footage of Wright brandishing a gun provided sufficient evidence for the jury to find that he possessed a firearm while dealing drugs and that he was a felon in possession of a firearm.

Even if the totality of circumstances at the gas station would not provide a basis for a reasonable jury to convict Wright, he cannot avoid the strong evidence tying him to the three guns and large quantity of fentanyl found in the safe. Although Wright continues to claim that the safe was not his, a review of the evidence regarding the placement and movement of the safe, Wright's ongoing communication relating to his concern about the location and the recovery of the safe, and his directions to move the safe (whether referred to as a box or an Xbox), provided sufficient evidence for a reasonable jury to determine he committed all three crimes under a theory of constructive possession. *See United States v. Coleman*, 909 F.3d 925, 928, 932 (8th Cir. 2018) ("Constructive possession 'is established if the person has dominion over the premises where the firearm [or drugs are] located, or control, ownership, or dominion over the firearm [or drugs themselves].'") (quoting *United States v. Cross*, 888 F.3d 985, 990 (8th Cir. 2018))).

The large quantity of fentanyl in the safe and the circumstances surrounding its discovery permitted a reasonable jury to find Wright possessed the fentanyl with intent to

15

distribute it.  *See Barrow*, 287 F.3d at 736-37 ("Circumstantial evidence such as drug quantity, packaging material, and the presence of cash may be used to establish intent to distribute, but possession of only a small quantity of illegal drugs does not justify an inference of such intent.").  In *Barrow*, the defendant possessed 19.26 grams of cocaine with a street value of $2,900 and the Eighth Circuit concluded there was sufficient evidence to establish intent to distribute when considered alongside other circumstantial evidence.  *Id.* at 737.  Here, Wright was in possession of approximately 850 fentanyl pills containing 93.34 grams of fentanyl with a street value over $15,800.  Omaha Police Sergeant Wendi Dye ("Dye"), a trained narcotics officer, testified that a personal dosage of fentanyl is often in micrograms because as little as two milligrams can kill a person.  Dye also testified the typical fentanyl user usually possesses between zero and five fentanyl pills, and that packaging also indicates intent to distribute—fentanyl prescribed by a doctor would be in a marked medicine bottle as opposed to a plastic bag hidden in a safe.

The government also presented expert testimony that drug traffickers often use guns to protect their drugs and the proceeds.  The three firearms found in the safe with the drugs were "quickly accessible" and "in close proximity to the drugs."  *See Goodrich*, 739 F.3d at 1098; *see also United States v. Sanchez-Garcia*, 461 F.3d 939 (8th Cir. 2006) (concluding the evidence was sufficient to support a nexus between a firearm found in the defendant's apartment bedroom and drug trafficking even though the drugs were found in the apartment's kitchen because of the close proximity coupled with circumstantial evidence and expert testimony).  On this record, there was sufficient evidence for a reasonable jury to infer Wright possessed the firearms in furtherance of drug trafficking.  Accordingly, Wright's motions for a judgment of acquittal are denied.

### III. CONCLUSION

The evidence in this case, viewed in the light most favorable to the jury's verdict, was sufficient for the jury to find Wright guilty of the crimes charged. Furthermore, the interests of justice do not require a new trial. Accordingly,

IT IS ORDERED:

1. Clifford Wright III's "Motion to Dismiss for [O]utrageous [G]overnment [C]onduct and Motion for a New Trial" (Filing No. 497) is denied.
2. Clifford Wright III's motions for judgment of acquittal (Filing Nos. 499, 508) are denied.

Dated this 8th day of September 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge